**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ROBERT EDWARDS**                                                                     **PLAINTIFF**

**V.**                                                         **CIVIL ACTION NO.  3:15CV227 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**             **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Robert Edwards appeals the final decision denying his application for a period of disability and disability insurance benefits ("DIB").  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be remanded.

In 2012, Plaintiff filed an application for DIB alleging a disability onset date of May 25, 2012, due to seizures, arthritis, high blood pressure, and carpal tunnel syndrome.  He has an eighth grade education[1] and was approximately 50 years old on his alleged onset date, with previous work experience as a router operator.  Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social

---

[1]Plaintiff testified that he quit school in the eighth grade at the administrative hearing; however, he indicated that he continued through the tenth grade on his disability report.  He has never received a GED.  ECF No. 6, pp. 42, 159.

Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease of the cervical spine, degenerative joint disease of the knees, bilateral carpal tunnel syndrome, depression, and obesity were medically severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff could not return to his past relevant work, but had the residual functional capacity to perform light work except he:

> may use his hands frequently, but not constantly, for repetitive activity; must not be exposed to hazards such as unprotected heights and no commercial driving; may primarily carry out simple instructions with some detailed instructions as long as they are familiar and do not change frequently; may occasionally experience a pause in work activity, but it will last no more than 30 seconds; interaction with others, including supervisors, should be occasional and on a basic level.[3]

Based on vocational expert testimony, the ALJ concluded at step five, that given

---

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3]ECF No. 6, p. 20.

Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a housekeeper/custodian, laundry sorter, and cafeteria attendant.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed, or alternatively remanded for two reasons: the ALJ erred in failing to incorporate wrist limitations into her residual functional capacity determination, and the ALJ erred in failing to properly weigh the opinion of the consulting psychologist.

Plaintiff alleges various impairments, but testified that he stopped working in May 2012, largely because hand, wrist, and elbow pain interfered with his ability to do his job.

Medical records confirm that Plaintiff has undergone several surgeries for carpal tunnel syndrome. Following carpal tunnel releases performed in May and July 2012, Plaintiff reported that his wrists had improved by 50%-60%. By October 2012, his treating physician advised that Plaintiff could return to work with some restriction, but he continued to be treated for wrist pain. At the administrative hearing, Plaintiff testified that his medication did not alleviate the pain, which he rated as an "8" on a scale of 1-10. He also testified that he could lift and/or carry 20-30 pounds.[4]

As his first point of error, Plaintiff argues that the ALJ erred in finding that he has the residual functional capacity to use his hands frequently, but not constantly, for repetitive activity. More particularly, Plaintiff maintains that the ALJ erred in failing to incorporate the wrist limitations assigned by his physician into his residual functional capacity assessment, despite assigning the opinion significant weight. In formulating Plaintiff's residual functional capacity, the ALJ explained that she considered the evidence as described herein.

In September 2012, a consultative examination revealed that Plaintiff had a full range of motion in his cervical spine, lumbar spine, wrists, and all extremity joints. He also demonstrated a normal grip and dexterity in both hands with full motor strength.[5]

In activities of daily living, Plaintiff's function report indicates that he attends to his personal hygiene, cooks meals, drives, shops for groceries, and uses a riding

---

[4]ECF No. 6, pp. 37-83, 293-302.

[5]*Id.* at 280-82.

4

lawnmower to cut the grass. The ALJ also cited medical records showing that Plaintiff went hunting in January 2014. Although the treating source indicates that Plaintiff had difficulty carrying his gun due to arm weakness, the ALJ noted that he did not report any neck, hand, or knee pain.[6]

In addition to this evidence, the ALJ remarked that treatment records from Plaintiff's nurse practitioner revealed that Plaintiff rated his hand pain as "0" on a scale of 1-10 in February 2013.[7] Examination findings also revealed moderate, right-sided facet tenderness with no trigger points in his cervical spine, and a mildly reduced range of motion secondary to pain-extension left lateroflexion left rotation. Plaintiff's motor strength was "4 out of 5 in his upper and lower side," but he had a "reduced sensation in his lower arm C6 distribution." The examination was otherwise normal. Progress notes from subsequent examinations through April 2014, revealed that Plaintiff reported that his pain medication helped to control his pain and enabled him to "function at [his] current level." [8]

---

[6]ECF No. 6, pp. 173-180.

[7]The undersigned finds no reference to a hand-pain rating in the treatment records in February 2013. The treating source notes that Plaintiff reports his neck pain at "10/10 in severity, on the right side, and has a sharp and stinging quality and radiates into the right occipital and wrist and finger distribution." ECF No. 6, pp. 373- 76. The source additionally notes that Plaintiff complains of weakness in his bilateral upper extremities aggravated by nothing in particular with no alleviation. Plaintiff rates his daily activities at 0/10. *Id.*

[8]ECF No. 6, pp. 21, 373-96.

The ALJ also determined that objective test results from two electromyography (EMG) and nerve conduction studies did not support Plaintiff's disabling allegations. The first EMG study performed in January 2013, showed Plaintiff had "<u>bilateral median mononeuropathies</u> at the wrist (carpal tunnel syndromes), mild [severity] on the <u>right</u> and mild to moderate in severity on the <u>left</u>, with conduction delays in sensory and motor fibers." Plaintiff also had a "<u>right ulnar neuropathy</u> at the elbow . . . , mild to moderate in severity, with slowing of conduction velocity in motor fibers." No evidence of cervical radiculopathy or other mononeuropathies involving Plaintiff's upper extremities were found. The examiner noted that a previous MRI report indicating "severe degenerative changes with myelopathy at C3-C4 and severe foraminal stenosis at multiple levels" was likely an erroneous interpretation, given the lack of "clinical features of myelopathy or needle EMG findings of radiculopathy." The examiner recommended that a new cervical MRI be obtained, but the ALJ noted that it was never performed. Plaintiff was also directed to avoid "direct pressure or hyperflexion at the elbow."[9]

In July 2013, a second EMG study performed by Dr. Raul Vohra revealed similar findings. Dr. Vohra, the only treating physician of record to submit an opinion concerning Plaintiff's upper extremity impairments, found as follows:

> Mr. Edwards is here today. EMG nerve conduction studies were done. These revealed a mild residual right median neuropathy at the hand, as well as a right ulnar neuropathy at the elbow of moderate severity. There is no evidence of denervation in the ulnar musculature. He also has a mild

---

[9]*Id.* at 369 (emphasis in original).

residual left median neuropathy at the hand. His left ulnar data is normal. There is no evidence of a right or left cervical radiculopathy. The median data in both hands are consistent with good surgical decompression with no evidence of ongoing impingement of either median nerve at the carpal tunnel.

Mr. Edwards' complaints of 4th and 5th digit numbness at this point appear to be stemming from a right ulnar neuropathy. I do not believe that his ulnar neuropathies are a part of his on-the-job injury, but his carpal tunnel syndrome and medial epicondylitis I believe are. I believe that he is at maximum [medical] improvement at this time. According to the *A.MA. Guides to the Evaluation of Permanent Impairment,* he would receive an impairment of 4% to each upper extremity for his residual median neuropathies. Additionally, he would have an impairment of 2% to the right upper extremity for his medial epicondylitis. In total, he would have an impairment of 6% to the right upper extremity and an impairment of 4% to the left upper extremity. I do not see the need for any further surgical intervention as far as his carpal tunnel syndrome is concerned.

**Plan:** Based on his carpal tunnel syndrome as well as his medial epicondylitis, I would limit this gentlemen from doing any repetitive forceful gripping, which would be defined as gripping greater than 50 pounds. ***I would also limit him from activities that require wrist flexion and extension to no more than an occasional basis.*** [10]

In weighing the medical evidence, the ALJ found that Dr. Vohra's assessment was entitled to significant weight because it was "largely consistent with his treatment notes." The ALJ specifically noted in support that Dr. Vohra's EMG study revealed Plaintiff had "mild residual right median at the hand, as well as right ulnar neuropathy at the elbow of moderate severity." The ALJ acknowledged that Plaintiff's nurse practitioner opined that Plaintiff's impairments would prevent him from returning to work, but rejected this opinion because the nurse practitioner was not an acceptable medical source. She also

---

[10]ECF No. 6, p. 368 (emphasis added).

rejected it because it was inconsistent with, *inter alia*, Dr. Vohra's opinion that Plaintiff was "limited only in lifting [greater] than 50 pounds and not frequently flexing and extending his wrists." Lastly, the ALJ observed that Plaintiff's testimony that he could lift/carry only 20-30 pounds was contrary to Dr. Vohra's findings that he could lift up to 50 pounds. Based on the evidence described above, the ALJ made a determination that Plaintiff has the residual functional capacity to perform light work if he uses his hands frequently, but not constantly, for repetitive activity.[11]

Although the ALJ assigned Dr. Vohra's opinion significant weight, Plaintiff claims she failed to adequately account for the limitations that Dr. Vohra assigned in her residual functional capacity assessment. Specifically, Plaintiff contends that "while the ALJ's residual functional assessment comports with one part of Dr. Vohra's expressed limitations, i.e., gripping greater than 50 pounds, the ALJ appears to have ignored the other part of the limitation expressed by this medical source, of no more than occasional flexion and extension of the wrist."[12] The error was prejudicial, Plaintiff argues, because the wrist limitations assigned by Dr. Vohra undermine the finding that he can perform the jobs identified by the vocational expert at step five, i.e., housekeeper/custodian, laundry sorter, and cafeteria attendant, which require frequent reaching and handling. When presented with a hypothetical that allowed for no more than occasional reaching, and less than occasional handling and fingering, the vocational expert testified that an individual

---

[11]ECF No. 6, pp. 23, 368.

[12]ECF No. 8, p. 7.

8

with Plaintiff's residual functional capacity would not be able to work.

In response, the Commissioner contends that the ALJ was not obligated to incorporate any limitations into the residual functional capacity assessment "simply because it appears in a medical opinion."[13] *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The Commissioner maintains that the evidence as a whole suggested that Plaintiff could use his hands frequently, but not constantly for repetitive activity.

Generally, the opinion and diagnosis of a treating physician should be given considerable weight in determining disability. But an ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). Further, the sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546 (c) (2010). In making this determination, the ALJ must consider all the record evidence, and perform a function-by-function assessment of a claimant's capacity to perform sustained work-related activities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).

---

[13] ECF No. 10, p. 13.

In the present case, the ALJ stated that she assigned significant weight to Dr. Vohra's assessment because it was consistent with EMG nerve conduction studies, but she offers no definitive reason for not incorporating the wrist limitations he assigned. While there may be no requirement to incorporate limitations because they appear in a medical opinion, the ALJ is required to incorporate limitations in the residual functional capacity assessment that are supported by the record. *See Boyd v. Apfel*, 239 F.3d 698, 706-08 (5th Cir. 2001).

In weighing the medical opinions of record, the ALJ expressly rejected the nurse practitioner's opinion because it was inconsistent with Dr. Vohra's opinion that Plaintiff was limited in "lifting [greater] than 50 pounds and not frequently flexing and extending his wrists." By limiting Plaintiff to light work, the ALJ's assessment accounts for not only the lifting limitations assigned by Dr. Vohra, but those testified to by Plaintiff himself.[14] Yet, the ALJ did not include wrist limitations in her residual functional capacity assessment. She does not articulate any reason for excluding them. *See Loza*, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation."); *Shelman v. Heckler*, 821 F.2d 316, 320-21 (6th Cir. 1987) ("While the ALJ was not bound by the opinions of plaintiff's treating physicians, he was required to set forth some basis for rejecting these opinions."). Nor is the reason readily apparent from the record.

---

[14] The regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967 (c).

As noted *supra*, Dr. Vohra was the only treating physician of record to offer an opinion on Plaintiff's upper extremity impairments and limitations.[15] Consultative examination findings showing that Plaintiff demonstrated a normal grip and dexterity in both hands with full motor strength were made prior to both EMG studies and Dr. Vohra's opinion. Treatment records indicating that pain medication helped also indicate that medication enabled him to "function at his current level." Absent a comprehensive function-by-function analysis of Plaintiff's hand-related limitations, it is unclear whether Plaintiff's "current level" limits him to occasional wrist flexion and extension as Dr. Vohra opined, or to frequent repetitive hand use as the ALJ found.[16] A residual functional capacity determination "must include a resolution of any inconsistences in the evidence." *Myers v. Apfel* 238 F.3d 617 (5th Cir. 2001). Any speculation "lies beyond the scope of appellate review." *Boyd*, 239 F.3d at 708. Because the ALJ has provided no insight into her reasons for excluding the limitations that Dr. Vohra assigned, the undersigned cannot confidently conclude that substantial evidence supports the ALJ's

---

[15] It is worth noting that following Plaintiff's first EMG study in January 2013, the examiner instructed that he avoid "direct pressure or hyperflexion at the elbow." ECF No. 6, p. 369. Plaintiff's surgeon also released Plaintiff to work with "some undefined restriction" following his carpal tunnel surgeries in 2012. To what extent the ALJ considered this evidence is unclear.

[16] The record indicates that the assessments of state agency medical consultants, who found that Plaintiff was capable of medium work, also predate Dr. Vohra's assessment and EMG studies. However, the ALJ stated that she gave little weight to these assessments because "other evidence, including [Plaintiff's] partial credible testimony, supports greater limitations." ECF No. 6, p. 23.

residual functional capacity assessment. *Hurst v. Colvin, —* F. App'x —, 2016 WL 588457, * 2 (5th Cir. Feb. 12, 2016) (errors are prejudicial when they "cast[s] into doubt the existence of substantial evidence" supporting the ALJ's decision) (quotation omitted).

In sum, the ALJ's failure to reconcile the apparent inconsistency between her determination that Plaintiff can use his hands on a frequent and repetitive basis, with Dr. Vohra's restriction to no more than occasional wrist flexion and extension, warrants remand. Because the Court so finds, it need not address Plaintiff's remaining arguments.

For all these reasons, the undersigned recommends that the ALJ's decision should be remanded for further proceedings consistent with this decision. On remand, the ALJ should provide a more comprehensive analysis of Plaintiff's limitations with references to evidence in support of the assessed limitations, and clarify the effect of the assessed limitations on Plaintiff's ability to perform work. Plaintiff's motion should be granted only to the extent that the case is remanded to the Commissioner; the Motion for an Order Affirming the Commissioner's Decision should be denied.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636.

This the 15th day of August 2016.

>                /s/  Linda R. Anderson
>                UNITED STATES MAGISTRATE JUDGE